IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KIMARIO ANDERSON,      )
individually and on behalf of the Coca-Cola  )
Bottlers' Association 401(k) Retirement   )
Savings Plan and all others similarly situated,  )
             )
      Plaintiff,    )
             )
  v.           )   Case No. 21-2054-JWL
             )
COCA-COLA BOTTLERS' ASSOCIATION;  )
THE COCA-COLA BOTTLERS'    )
ASSOCIATION 401(K) SAVINGS PLAN  )
BENEFIT COMMITTEE;     )
STEPHANIE R. GRIFFIN; ANN BURTON;  )
SUZY HIGGINBOTHAM; JOHN GOULD;  )
and JOHN AND JANE DOE     )
DEFENDANTS 4-30,      )
             )
      Defendants.   )
             )
_____ )

## **MEMORANDUM AND ORDER**

    This action, brought under the Employee Retirement Income Security Act of 1974

(ERISA), comes before the Court on defendants' motion to dismiss (Doc. # 27), by which

defendants seek dismissal of the claims asserted in plaintiff's second amended complaint

pursuant to Fed. R. Civ. P. 12(b)(1) and (6).  As more fully set forth below, the motion is

**granted in part and denied in part**.  The motion is granted with respect to plaintiff's

claims related to the Coca-Cola Stock Fund, the claims related to the direct payment of

recordkeeping fees, and the claims against the individual defendants for co-fiduciary liability; those claims are hereby dismissed.  The motion is otherwise denied.

## I.    **Background**

Defendant Coca-Cola Bottlers' Association ("CCBA") is an association of independent companies that bottle and distribute Coca-Cola products.  CCBA offers various employee benefit programs to its members, including a 401(k) retirement plan ("the Plan").  The Plan is a defined contribution plan, a type of plan in which participants hold individual accounts that receive contributions from the employee and the employer, which may be invested at the participant's choosing in various investment options in a menu provided by the plan.  Plaintiff was employed by Heartland Coca-Cola Bottling Company, LLC ("Heartland"), a member of CCBA, and he participated in the Plan.  The Plan was administered on behalf of CCBA by defendant The Coca-Cola Bottlers' Association 401(k) Savings Plan Benefit Committee ("the Committee"), and the individual defendants were members of the Committee at relevant times.

By his second amended complaint, plaintiff asserts claims against defendants under Section 404(a) of ERISA, 29 U.S.C. § 1104(a).  Plaintiff asserts those claims on his own behalf, on behalf of the Plan, and on behalf of a putative class of participants and beneficiaries of the Plan since February 1, 2015.  Plaintiff alleges that defendants breached their fiduciary duty of prudence under ERISA by allowing the Plan to offer investment options that charged excessively high costs as a percentage of the amount invested in that product.  As a part of that claim, plaintiff alleges that defendants acted imprudently by

having the Plan offer retail share classes of mutual funds instead of lower-cost institutional share classes of the same funds; by failing to offer lower-cost collective investment trust ("CIT") versions of certain T. Rowe Price Target Date funds in the Plans; and by failing to offer lower-cost funds that were substantially similar to funds offered by the Plan. Plaintiff further alleges that defendants did cause the Plan to offer some lower-cost options in 2019, with participants' holdings in some cases being transferred automatically to the new options, but that defendants nevertheless breached their duty by failing to make those changes earlier. Plaintiff also alleges that defendants breached their duty of prudence by allowing the Plan to pay excessive direct fees to Wells Fargo, the Plan's recordkeeper. Plaintiff also claims that defendants breached their duty of loyalty by allowing the Plan to include investment options offered by Wells Fargo. Plaintiff further claims that defendants breached duties of loyalty and prudence with respect to the Plan's investment in the Coca-Cola Common Stock Fund, which included stock in a single company. In 2005, the Plan effectively froze that investment option by no longer allowing new investments into that fund because of its non-diverse nature, but the Plan allowed participants to retain their holdings in the fund. Finally, plaintiff claims that all defendants are liable for other defendants' breaches as co-fiduciaries under 29 U.S.C. § 1105.

By the present motion, defendants seek dismissal of plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(1) because of a lack of constitutional standing. In the alternative, defendants contend under Fed. R. Civ. P. 12(b)(6) that plaintiff's complaint fails to state a claim for relief.

## II.    **Standing**

Defendants argue that plaintiff lacks constitutional standing with respect to his claims. "To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) (citation and internal quotations omitted).

Defendants first argue that plaintiff has failed to articulate in his complaint a plausible theory of causation of injury.[1] The Court rejects this argument, as the complaint may reasonably be read to include the claim that defendant's inclusion of over-priced funds in the Plan caused a loss of value in participants' accounts.[2]

Defendants next argue that plaintiff did not suffer injury to his accounts. In the complaint, plaintiff alleges that he invested in 33 of the Plan's funds. Defendants rely on plaintiff's account statements to show his actual history of investment in the Plan.[3] Plaintiff

---

[1] The Court rejects any argument that plaintiff's claims should be dismissed because he has not submitted evidence (for instance, from an expert) establishing causation and damages in response to defendants' factual attack on standing. The evidence submitted by defendants did not create a factual dispute concerning plaintiff's actual loss from the alleged breaches, and thus the Court still accepts plaintiff's allegations as true. Moreover, to the extent plaintiff's standing depends on proof of causation and damages, the issue is intertwined with the merits of the case, and the consideration of evidence would thus require conversion of this motion to one for summary judgment. *See Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). The Court declines in its discretion to convert the motion to summary judgment at this time.

[2] In their reply brief, defendants withdrew their argument that plaintiff lacks standing with respect to his claim that the Plan paid excessive direct recordkeeping fees.

[3] Plaintiff argues that this evidence outside the complaint should not be considered by the Court in ruling on the motion to dismiss. If a party makes a factual attack on jurisdiction, however, the Court may consider evidence to resolve disputed facts. *See* Continued…

became a participant in the Plan in 2017, and until late 2019, he essentially invested in only two of the Plan's funds.  In the fourth quarter of 2019, plaintiff invested a small amount in every available fund.  In 2020, his employment with Heartland was terminated, and he withdrew the entire balance from this Plan account.

Defendants argue that any losses by plaintiff would have been minimal, given the amounts invested, and that plaintiff lacks standing for that reason.  The Court rejects this argument.  As this Court has previously noted, the Supreme Court has held that "an identifiable trifle" is sufficient for standing and thus has effectively rejected a *de minimis* standard for standing.  *See Ensminger v. Credit Law Ctr.*, 2019 WL 4341215, at *3 (D. Kan. Sept. 12, 2019) (Lungstrum, J.) (citing *United States v. Students Challenging Regulatory Agency Procs. (SCRAP)*, 412 U.S. 669, 689 n.14 (1973)).

Defendants also argue that to establish causation plaintiff must show that he would have chosen prudent alternatives if they had been available, and that plaintiff's investment history shows that he would not have done so.  In that regard, defendants note that plaintiff did not choose to invest in the Plan's cheapest funds and that in 2019 he chose to invest in *every* fund in the Plan.  Defendants rely on a single case, *Ortiz v. American Airlines, Inc.*, 5 F.4th 622 (5th Cir. 2021), in which the court concluded that the plaintiff had failed to established standing at the summary judgment stage because she had failed to submit evidence that she would have invested in a certain fund in the Plan (on which her expert's

---

*Baker*, 979 F.3d at 872.  Plaintiff has not submitted evidence or argument to dispute the information in the account statements, which information the Court therefore accepts as true.

damage calculations were based) if the allegedly improper fund in which she was invested had not been offered. *See id.* at 628-29. The Court is not persuaded, however. The Court is not presently considering evidence on this issue. Moreover, in *Ortiz*, the plaintiff could not establish damages based on the use of a fund that was available in the Plan because she did not invest in the option when she had the opportunity. *See id.* In this case, plaintiff has alleged that defendants should have substituted lower-cost options for those in the Plan, and thus plaintiff never had the opportunity to invest in the alternative funds. In addition, as plaintiff has alleged and as plaintiff's account statements confirm, when certain lower-cost funds were substituted into the Plan in 2019, participants' balances were automatically transferred to the new funds; thus, one may reasonably infer that if the Plan had offered those alternatives earlier, plaintiff would have become invested in those funds. The Court therefore concludes that plaintiff has sufficiently established the requisite injury and causation for standing at this stage.

Defendants next argue that even if plaintiff has standing for the funds in which he did invest, he should not be deemed to have standing to assert claims based on the selection of funds in which he did not invest. Defendants would thus limit plaintiff's claims to the two funds in which he primarily invested. The account records show, however, that plaintiff did invest in every fund in the Plan at one juncture (with one exception, discussed below). Defendants have not cited any authority suggesting that a plaintiff would not have standing to assert a claim related to a plan option in which he did invest because of the duration or amount of the investment.

Moreover, plaintiff has alleged a unitary claim of breach because of an overarching process by which defendants chose imprudent options for the Plan.  In light of that claim, the Court is persuaded by the majority of courts to have considered the issue that plaintiff may assert claims on behalf of the Plan based on allegedly overpriced funds in which he did not invest.

In this case, plaintiff has brought his claims not only on his own behalf, but also derivatively, on behalf of the Plan.  Under ERISA, any plan participant may bring suit to recover benefits due him or to enforce his rights under the plan, *see* 29 U.S.C. 1132(a)(1), and a fiduciary who breaches its fiduciary duty is liable for any losses to the plan from such breach, *see id.* § 1109(a).  Thus, on its face ERISA permits a participant's derivative claim to recover not just his own losses, but losses to the plan generally.  The Court agrees that satisfaction of a statutory standing requirement is not sufficient to satisfy the separate Article III constitutional requirement of standing.  In this case, however, plaintiff has asserted losses relating to funds in which he invested, and therefore, the constitutional standing requirement has been met.

Defendants nevertheless argue that a plan participant has no standing with respect to claims relating to plan funds in which he did not invest.  The majority of courts have rejected this argument and have concluded that the participant's standing does extend to other funds in the plan.  *See Dover v. Yanfeng US Automotive Interior Sys. I LLC*, __ F. Supp. 3d __, 2021 WL 4440324, at *3 (E.D. Mich. Sept. 28, 2021) (cases favoring defendants on this issue "represent the minority position"); *McGowan v. Barnabas Health, Inc.*, 2021 WL 1399870, at *4 (D.N.J. Apr. 13, 2021) (courts "have generally rejected the

argument that a plaintiff's ERISA challenge must be confined to the individual funds in which he or she invested"); *Kurtz v. Vail Corp.*, 511 F. Supp. 3d 1185, 1194 (D. Colo. 2021) ("the bulk of authority" supports the plaintiff on this issue). This Court is persuaded by the reasoning of those courts in the majority. Plaintiff does have an injury-in-fact as required for constitutional standing, and ERISA then allows plaintiff to sue on behalf of the Plan and seek relief beyond his own injury. *See McGowan*, 2021 WL 1399870, at *4.

As other courts have pointed out, one opinion of the Supreme Court at least suggests this result. *See id.* (citing *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618, 1620 (2020)); *Mator v. Wesco Distribution, Inc.*, 2021 WL 4523491, at *4 (W.D. Pa. Oct. 4, 2021) (quoting *McGowan*). In *Thole*, the Supreme Court held that participants in a defined-benefit plan lacked standing to assert ERISA claims because the payments to which they were entitled were fixed, and thus they did not stand to gain if the plans invested differently. *See Thole*, 140 S. Ct. at 1622. The Supreme Court relied heavily on the fact that the plan at issue was a defined-benefit plan and not a defined-contribution plan, even stating that that distinction was "[o]f decisive importance to [the] case." *See id.* at 1620, 1618. The Court rejected the argument that the plaintiffs were suing as representatives of the plan itself, noting that "in order to claim the interests of others, the litigants themselves must still have suffered injury in fact, thus giving them a sufficiently concrete interest in the outcome of the issue in dispute." *See id.* at 1620 (citations and internal quotation omitted). Thus, as suggested by the Supreme Court, if a plaintiff *has* suffered an injury in fact and has standing (by virtue of his investment in some plan funds at issue), he is entitled to represent the interests of other injured participants in a derivative capacity.

Moreover, as some courts in the majority have noted, the propriety of the plaintiff's representation of other participants in a class action is appropriately addressed in class certification proceedings and not as part of the standing analysis. *See, e.g.*, *See Dover*, 2021 WL 444324, at *3; *Kurtz*, 511 F. Supp. 3d at 1193; *Cassell v. Vanderbilt Univ.*, 2018 WL 5264640, at *3 (M.D. Tenn. Oct. 23, 2018).

In adopting the majority rule, courts have relied on the fact that the plaintiff participant's claims were addressed to the defendant fiduciaries' process or the plan generally, which would therefore affect participants in all of the funds, and were not solely based on individual funds. *See Kurtz*, 511 F. Supp. 3d at 1192; *Boley v. Universal Health Servs., Inc.*, 498 F. Supp. 3d 715, 724-25 (E.D. Pa. 2020); *Cassell*, 2018 WL 5264640, at *3. Plaintiff here has alleged a general claim that defendants employed a process by which they imprudently allowed the Plan to offer higher-cost funds and failed to monitor the funds' costs. The alleged general practice would have affected participants generally, and plaintiff thus has standing to assert the general claim.

As numerous courts have noted, this majority position is supported by decisions by the Sixth Circuit and the Eighth Circuit in slightly different contexts. In *Fallick v. Nationwide Mutual Insurance Co.*, 162 F.3d 410 (6th Cir. 1998), the Sixth Circuit was addressing the issue of the standing of a participant of an ERISA-governed insurance plan to represent the interests of participants in other plans in a class action. *See id.* The court stated that the district court had improperly confused the issue of a plaintiff's Article III standing with the relationship between a class representative and absent class members, which is governed by Fed. R. Civ. P. 23. *See id.* at 622. The court also noted that the

district court had overlooked court decisions holding "that an individual in one ERISA benefit plan can represent a class of participants in numerous plans other than his own, if the gravamen of the plaintiff's challenge is to the general practices which affect all of the plans." *See id.* (citing cases). The court ultimately concluded that "once a potential ERISA class representative established his individual standing to sue his own ERISA-governed plan, there is no additional constitutional standing requirement related to his suitability to represent the putative class of members of other plans to which he does belong." *See id.* at 424.

In *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009), the Eighth Circuit held that the plaintiff had standing to pursue ERISA claims for the period preceding his own participation in the plan. *See id.* at 591. This portion of the court opinion is instructive:

> Article III generally requires injury to the plaintiff's personal legal interests, but that does not mean that a plaintiff with Article III standing may only assert his own rights or redress his own injuries. To the contrary, constitutional standing is only a threshold inquiry, and so long as Article III is satisfied, persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others. In such a case, a plaintiff may be able to assert causes of action which are based on conduct that harmed him, but which sweep more broadly than the injury he personally suffered.

*See id.* at 591-92 (citations and internal quotations omitted). The court concluded that the district court, in ruling to the contrary, had erroneously conflated the issue of Article III standing with the plaintiff's personal causes of action under ERISA. *See id.* at 592. The Eighth Circuit noted that the plaintiff had sued derivatively under ERISA on behalf of the

plan, and it held that such a plaintiff has standing to seek relief that sweeps beyond his own injury. *See id.* at 593 (citing *Fallick*, 162 F.3d at 423).

Defendants argue that a decision in the minority, *In re Omnicom ERISA Litigation*, 2021 WL 3292487 (S.D.N.Y. Aug. 2, 2021), represents the better position, but the Court does not agree. A great portion of that court's reasoning was dedicated to addressing whether a particular result was compelled by Second Circuit precedent, *see id.* at *8-9, an issue not present here. The *Omnicom* court also noted that the fact that the plaintiff had brought a derivative action under ERISA on behalf of the plan was not dispositive of the standing issue because a plaintiff must demonstrate both statutory and constitutional standing. *See id.* at *10. The court did not offer any reason, however, why a plaintiff who *does* have constitutional standing by virtue of his investment in some of the plan's funds may not seek relief for the entire plan derivatively.

The *Omnicom* court primarily relied on two other cases from its own district that it found indistinguishable, but those cases are no more persuasive. *See id.* at *9-10 (citing *In re UBS ERISA Litig.*, 2014 WL 4812387 (S.D.N.Y. Sept. 29, 2014), *aff'd sub nom. Taveras v. UBS AG*, 612 F. App'x 27 (2d Cir. 2015) (unpub. op.), and *Patterson v. Morgan Stanley*, 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019)). In *UBS*, the court held that the plaintiff could not seek relief for her plan derivatively because she had not alleged personal loss and thus had no constitutional standing. *See UBS*, 2014 WL 4712387, at *6-7. In an unpublished summary opinion, the Second Circuit affirmed, concluding that the plaintiff had failed to allege individualized harm and thus lacked standing. *See Tavares*, 612 F. App'x at 29. That case is of limited value, however, in deciding whether a plaintiff who *does* have

Article III standing may derivatively assert claims that go beyond the funds in which the plaintiff invested.

*Patterson*, decided by the same district judge that decided *UBS*, does address that issue, as the defendants had challenged the plaintiff's standing only with respect to those funds in which the plaintiff did not invest. *See Patterson*, 2019 WL 4934834, at *4. In rejecting the plaintiff's argument based on the derivative nature of the suit, the court stated that the plaintiff could not have been harmed by conduct concerning the other funds, and then it rather conclusorily stated that the plaintiff therefore lacked standing concerning those funds. *See id.* at *5. The court stated that a holding to the contrary "would essentially exempt derivative suits from Article III's requirement that plaintiffs suffer an individual harm." *See id.* That argument is not persuasive, however, as the plaintiffs in that case – as here – *had* suffered individual harm with respect to the funds in which they had invested. In such case, Article III's standing requirement is still being honored. On the other hand, applying the *Patterson* court's holding would seem to have the effect of eliminating derivative suits altogether, as a plaintiff would lack standing to seek relief beyond the scope of his own losses.

For these reasons, the Court agrees with the majority of courts on this issue, and it therefore rejects defendants' argument that plaintiff lacks standing to challenge conduct relating to funds in the Plan in which plaintiff did not invest.[4]

---

[4] Defendants also argue that because plaintiff is a former participant in the Plan and not a present one, having withdrawn the entirety of his Plans funds, he lacks standing to seek injunctive relief. Defendants made this argument only summarily, however, in a Continued…

The Court does make one exception to its ruling concerning standing. Defendants argue that even if plaintiff has standing to assert his general claim concerning the Plan's offering high-cost investment options, he nonetheless lacks standing to assert the separate claim regarding the Coca-Cola stock fund. The Court agrees. As noted above, courts have often relied on the general nature of an imprudent process claim in ruling that a plaintiff has standing with respect to funds in which he did not invest. Plaintiff's claims regarding the Coca-Cola fund, however, in which he alleges that the failure to remove the fund was a breach of the duties of prudence and loyalty because the fund was not diversified, are completely discrete from his other claims, which all relate to the costs of the Plan's funds. Thus, unless plaintiff can demonstrate Article III standing with respect to this discrete claim, the claim is subject to dismissal. *Cf. Boley*, 498 F. Supp. 3d at 724 (outcome would be different if plaintiffs had attempted to bring piecemeal claims involving only a single fund each, in which case plaintiffs could demonstrate standing only for the funds in which they had invested).

In his complaint, plaintiff has specifically alleged that he invested in 33 investment options offered by the Plan, including the Coca-Cola fund. Plaintiff's account statements (submitted by defendants as part of their factual challenge to jurisdiction) show that plaintiff did not in fact invest in that fund. Moreover, plaintiff's allegation is implausible on its face in light of his separate allegation that the fund was frozen by the Plan in 2005,

---

footnote, and they have offered no analysis of the issue in light of the derivative nature of the suit and the Court's ruling regarding standing. Accordingly, the Court declines to address the argument at this time.

with no new investments in that fund permitted. Accordingly, the Court resolves this factual issue in favor of defendants and finds that plaintiff did not in fact invest in the Coca-Cola fund.[5] The Court therefore dismisses plaintiff's claims relating to that fund for lack of standing, and defendants' motion is granted to that extent.

### III.   Claim of Imprudence Concerning Investment Options

Pursuant to Fed. R. Civ. P. 12(b)(6), defendants move for dismissal of plaintiff's claim that defendants breached their duty of prudence in selecting and failing to remove various investment options offered by the Plan because of the administrative costs of those options (assessed as a percentage of the investment). The Court will dismiss a cause of action for failure to state a claim under Fed. R. Civ. P. 12(b)(6) only when the factual allegations fail to "state a claim to relief that is plausible on its face," *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive, *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *See Bell Atlantic*, 550 U.S. at 555. The Court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id.*, and view all reasonable

---

[5] In his response brief, plaintiff neither offered an explanation how his allegation concerning his investment in this fund could possibly be true, nor withdrew it. The Court is perplexed by this failure in light of defendants' evidence, which appears to show that plaintiff's allegation was false.

inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

Plaintiff's imprudence claims under ERISA are not governed by any heightened pleading standard. In *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014), the Supreme Court noted that the motion to dismiss under Rule 12(b)(6) provides an "important mechanism for weeding out meritless claims," but it also confirmed that the analysis of such a motion is subject to the usual standards under *Twombly* and *Iqbal*. *See id.* at 425; *see also Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 742 (2022) (remanding for consideration of imprudence claims under the *Twombly-Iqbal* standards). The Supreme Court noted in *Dudenhoeffer* that the duty of prudence turns on the circumstances prevailing at the time of the fiduciary acts, and that the appropriate inquiry is therefore context specific. *See Dudenhoeffer*, 573 U.S. at 425.

In its last three significant cases involving claims of imprudence under ERISA, a unanimous Supreme Court has rejected liability-limiting arguments at the pleading stage and vacated lower court rulings favoring defendants. In *Dudenhoeffer*, the Court began by noting that ERISA subjects pension plan fiduciaries to a duty of prudence, which requires the exercise of "the skill, care, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *See id.* at 415 (quoting 29 U.S.C. § 1104(a)(1)). The Court proceeded to reject the defendants' argument that a presumption of prudence should exist for fiduciaries of an employee stock ownership plan (ESOP). *See id.* at 418-25.

15

In *Tibble v. Edison International*, 575 U.S. 523 (2015), the Supreme Court rejected the rule urged by defendants (and applied by the Ninth Circuit) that a fiduciary need only conduct a full due-diligence review of the plan's funds in the event of a significant change in circumstances since the time of a previous review (conducted, for instance, outside the limitations period). *See id.* at 528-31. The Court based that ruling on its conclusion that the duty of prudence under ERISA imposes a continuing duty to monitor investments and remove imprudent ones. *See id.* at 530.

Finally, in *Hughes*, as in the present case, the plaintiffs alleged that the defendants violated their duty of prudence by offering needlessly expensive investment options. *See Hughes*, 142 S. Ct. at 739-40. The Seventh Circuit held that the plaintiffs had failed to state a claim, in part because the availability of low-cost options in the plan eliminated concerns that other plan options were imprudent. *See id.* at 740. The Supreme Court rejected that reasoning as flawed, concluding that "[s]uch a categorical rule is inconsistent with the context-specific inquiry that ERISA requires and fails to take into account respondents' duty to monitor all plan investments and remove any imprudent ones." *See id.* (citing *Tibble*, 575 U.S. at 530).

The parties generally agree on the basic standard for stating an imprudence claim under ERISA, which was recently described by the court in *Schapker v. Waddell & Reed Financial, Inc.*, 2018 WL 1033277 (D. Kan. Feb. 22, 2018) (Robinson, J.), as follows:

> Because the statute's prudent person standard is an objective one, the Court's inquiry into whether the duty was breached focuses on the process by which the fiduciary makes its decisions rather than the results of those decisions. A plaintiff may survive a motion to dismiss by alleging facts that directly address the process by which the fiduciary manages a plan, or

16

circumstantial factual allegations that lead the court to reasonably infer from what is alleged that the process was flawed. A plaintiff alleging a claim of an imprudent or disloyal process through circumstantial factual allegations cannot avoid a motion to dismiss by simply alleging that better or cheaper investment opportunities were available at the time of the relevant decisions. Rather, the plaintiff must allege facts that lead to the reasonable inference that a prudent fiduciary in like circumstances would have acted differently.

*See id.* at *7 (footnotes and internal quotations omitted). In the present case, plaintiff has not alleged facts directly addressing defendants' actual process in selecting investment options for the Plan. Thus, as both sides agree, the issue here is whether plaintiff has sufficiently alleged circumstantial facts going beyond the mere fact that better opportunities were available, which facts create a reasonable inference that defendants acted imprudently.

The Court concludes that plaintiff has satisfied that requirement of alleging more than the mere availability of better options. Specifically, in claiming that defendants imprudently allowed the Plan to offer options that were too costly, plaintiff has alleged that defendants failed to select comparable funds that were cheaper; failed to offer institutional share classes of certain funds that were cheaper than the retail shares classes that were offered by the Plan; and failed to offer collective investment trust (CIT) versions of certain funds offered by the Plan. Plaintiff further relies on the fact that in 2019 defendants replaced certain funds in the Plan with less costly alternatives, with Plan participants' investments being automatically transferred to the new options in some cases. Defendants attack each of these allegations separately, arguing in each case that the allegation is not sufficient to state an imprudence claim. As defendants concede, however, the allegations must be considered together, in a holistic sense, without parsing the complaint "piece by

17

piece to determine whether each allegation, in isolation, is plausible." *See Sweda v. University of Penn.*, 923 F.3d 320, 331 (3d Cir. 2019) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)), *cert. denied*, 140 S. Ct. 2565 (2020). The Court concludes that plaintiff's allegations in totality are sufficient to state a plausible imprudence claim based on the costs of certain funds offered by the Plan.

First, plaintiff alleges that defendants imprudently allowed the Plan to offer certain investments options that had too high a percentage cost. In a chart in the complaint, plaintiff has compared a number of the Plan's funds to other funds – alleged to be substantially similar according to an industry-recognized software program using quantitative methods – that had lower costs and performed as well or better than the Plan's funds. Defendants argue that the mere fact that the Plan's funds carried the costs that they did does not support a claim of imprudence, as funds' features may differ and a higher-priced fund may perform well enough to justify that price. Defendants cite caselaw requiring more than the mere availability of cheaper funds to state a claim of imprudence based on high costs. *See, e.g.*, *Anderson v. Intel Corp.*, 2021 WL 229235, at *9 (N.D. Cal. Jan. 21, 2021). Defendants also note that some courts have required a meaningful benchmark to which allegedly high-cost funds may be compared. *See, e.g.*, *id.*; *Cho v. Prudential Ins. Co. of Am.*, 2021 WL 4438186, at *8 (D.N.J. Sept. 27, 2021); *Kendall v. Pharmaceutical Prod. Dev., LLC*, 2021 WL 1231415, at *6 (E.D.N.C. Mar. 31, 2021). Defendants argue that plaintiff's comparisons are not apt and thus do not give rise to a plausible inference of imprudence.

In this case, however, plaintiff has not merely cited possible lower-cost alternatives. Instead, plaintiff has specifically alleged that his comparisons are appropriate (substantially similar), thus providing a meaningful benchmark, and he has further identified the method by which the comparisons were created.  Plaintiff has also supplemented those allegations with one analyst's conclusion that one index fund's costs were outrageous when compared with similar funds in the market.  Plaintiff's allegations, including his allegation that his comparisons are apt, must be assumed true at this stage, and the Court agrees with Judge Robinson's conclusion in *Schapker* and that of other courts that the aptness of such comparisons presents a factual question that is not properly resolved on a motion to dismiss.  *See Schapker*, 2018 WL 1033277, at *8 (citing cases); *Miller v. AutoZone, Inc.*, 2020 WL 6479564, at *7 (W.D. Tenn. Sept. 18, 2020); *Pinnell v. Teva Pharmaceuticals USA, Inc.*, 2020 WL 1531870, at *5 (E.D. Pa. Mar. 31, 2020).

Second, plaintiff alleges that defendants acted imprudently by allowing the Plan to offer retail share classes for some funds instead of offering lower-cost, but otherwise identical, institutional share classes for the same funds (for which the Plan qualified by virtue of its size).  Again, plaintiff has provided a chart making such comparisons.

Defendants argue that higher-percentage fees charged by retail share class funds often defray other administrative fees that a plan would otherwise pay, in an arrangement known as "revenue sharing," which provides an obvious alternative explanation for a plan fiduciary's decision to offer a retail share class fund; and that the use of such a fund therefore does not create any inference of imprudence despite the higher percentage cost. *See Davis v. Salesforce.com, Inc.*, 2020 WL 5893405, at *5 (N.D. Cal. Nov. 5, 2020).  For

19

that reason, some courts have rejected imprudence claims based on the plan's offering retail instead of institutional share classes.  *See, e.g.*, *id.*; *Kong v. Trader Joe's Co.*, 2020 WL 5814102, at * 4 (C.D. Cal. Sept. 24, 2020); *Marks v. Trader Joe's Co.*, 2020 WL 2504333, at *8 (C.D. Cal. Apr. 24, 2020).

Other courts have found that such allegations do state a claim of imprudence, however.  *See, e.g.*, *Schapker*, 2018 WL 1033277, at *9; *Miller v. Astellas US LLC*, 2021 1387948, at *8 (N.D. Ill. Apr. 13, 2021); *McGowan v. Barnabas Health, Inc.*, 2021 WL 1399870, at *5-7 (D.N.J. Apr. 13, 2021); *Pinnell*, 2020 WL 1531870, at *5-6.  In *Sacerdote v. New York Univ.*, 9 F.4th 95 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1112 (2002), the Second Circuit concluded that a share-class imprudence claim had been adequately pleaded, and it reversed the district court's ruling to the contrary, despite the argument that a fiduciary may prudently choose a retail class share fund over an institutional class share fund because the former may offer a particular benefit (in that case, greater liquidity).  *See id.* at 108.  The court noted that a plaintiff was not required in his allegations to rule out every possible lawful explanation for the challenged conduct, and it stated that the explanation proffered by the defendant went to the merits of the case and was thus misplaced at the pleading stage.  *See id.*  As discussed above, this Court agrees that issues relating to comparisons offered by a plaintiff generally present factual issues that should not be decided on a motion to dismiss.  Moreover, in this case, plaintiff has addressed the revenue-sharing explanation by his specific allegation that any revenue sharing for some of the allegedly imprudent funds did not offset the higher prices charged for those funds.  That additional allegation distinguishes this case from cases cited by defendants.  *Cf. Kong*,

2022 WL 5814102, at *4 (plaintiff's allegations failed to address whether other benefits offset the higher costs of retail share class funds); *Marks*, 2020 WL 2504333, at *8 (same).

Moreover, plaintiff has alleged that in 2018 defendants amended their policy statement to state that the Plan would offer institutional share class funds if available because of the lower costs of such funds, and that in 2019 defendants replaced some retail funds with institutional funds, with participants' balances automatically transferred to the new funds.   These additional allegations support reasonable inferences that those institutional share class funds were superior options, and thus they support a plausible claim that defendants imprudently delayed in making those switches.

Third, plaintiff has alleged that defendants imprudently failed to have the Plan offer the CIT versions of particular T. Rowe Price target date mutual funds in the Plan. Defendants argue that these comparisons between CITs and mutual funds are not apt because CITs are subject to different regulatory and transparency requirements and have different features, and defendants cite cases in which courts have rejected such claims as insufficiently pleaded.  *See,e.g.*, *Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1305 (D. Minn. 2021); *Tobias v. NVIDIA Corp.*, 2021 WL 4148706, at *12 (N.D. Cal. Sept. 13, 2021).

The Court, however, is unwilling to impose what would seem to be a *per se* rule effectively preventing a plaintiff from asserting an imprudence claim based on the failure to offer CITs instead of mutual funds, particularly in light of the Supreme Court's apparent disinclination to recognize such rules for pleading imprudence claims.  Other courts have permitted such claims, ruling that the comparison presents an issue of fact not to be decided

at the pleading stage.  *See, e.g.*, *Peterson v. Insurance Servs. Office, Inc.*, 2021 WL 1382168, at *4 & n.7 (D.N.J. Apr. 13, 2021); *Jones v. Coca-Cola Consolidated, Inc.*, 2021 WL 1226551, at *5 (W.D.N.C. Mar. 31, 2021); *Davis Magna Int'l of Am., Inc.*, 2021 1212579, at *7 (E.D. Mich. Mar. 31, 2021).  Plaintiff has specifically alleged that the CITs were not materially different from their mutual fund counterparts, and as above, the Court is persuaded the aptness of that comparison presents a factual issue not to be decided at this stage.  Finally, plaintiff has also alleged that in 2019 the Plan did switch from the target date mutual funds to CITs, automatically transferring participants' balances, and the fact of those automatic transfers supports a plausible inference that the investment options were in fact comparable.

Fourth, as discussed, plaintiff also relies on the Plan's 2019 changes in favor of lower-cost investment options, and the Court agrees that such allegations add to the total mix of alleged facts that create a plausible inference of imprudence here.  Defendants argue that such allegations do not sufficiently support a claim that defendants should have acted sooner.  Defendants rely on two cases in which courts ruled that a short-term delay did not necessarily imply imprudence because performance cannot always be judged in the short term.  These claims by plaintiff, however, are based on a failure to evaluate costs, not underperformance, and thus defendants' argument for a longer delay time is not on point.  The Court concludes that these allegations are relevant and support plaintiff's imprudence claims – particularly in light of the allegations that balances were automatically transferred, as such allegations counter defendants' possible alternative explanation that plaintiff's comparisons between the investment options are not apt.

Accordingly, the Court concludes from the totality of the complaint that plaintiff has not based his imprudence claims solely on allegations that better alternatives were available to defendants in selecting or retaining the Plan's investment options, but that plaintiff's complaint does offer additional facts supporting a reasonable and plausible inference that defendants breached their fiduciary duty of prudence with respect to the costs of some of the Plan's options. The Court therefore denies the motion to dismiss as it relates to these claims.

## IV.     Claim of Excess Recordkeeping Fees

Defendants also seek dismissal of plaintiff's claim that defendants breached their duty of prudence by allowing the Plan to pay unreasonably excessive direct recordkeeping fees to Wells Fargo. *See* 29 U.S.C. § 1104(a)(1) (fiduciary's duty of prudence extends to defraying reasonable expenses of administering the plan). Plaintiff has alleged that the fees paid to Wells Fargo were not tied to the amount or nature of the work performed; that the fees far exceeded the reasonable market rate paid by similar plans according to industry survey data; and that defendants failed to monitor the fees properly and failed to negotiate reductions in accord with their duty of prudence.

Defendants argue that plaintiff's factual allegations are not sufficient to state a plausible claim of unreasonable fees. As they note, the mere fact that a plan pays more in direct fees than other plans does not create an inference that the plan's fee payments were unreasonable or imprudent, as the plan may have received more or different or better services than other plans for those fees. *See Albert v. Oshkosh Corp.*, 2021 WL 3932029,

at *5 (E.D. Wis. Sept. 2, 2021) ("The mere existence of purportedly lower fees paid by other plans says nothing about the reasonableness of the Plan's fee, and it does not make it plausible that another recordkeeper would have offered to provide the Plan with services at a lower cost."), *appeal filed* (7th Cir. Oct. 1, 2021). Defendants cite authority indicating that a plaintiff does not state a plausible claim in the absence of factual allegations describing the particular services performed, putting a reasonable cost on those services, or identifying another recordkeeper that would have performed the same services for less. *See id.* (plaintiff did not state why the fee was unreasonable); *Forman v. TriHealth, Inc.*, __ F. Supp. 3d __, 2021 WL 4346764, at *5-6 (S.D. Ohio Sept. 24, 2021), *appeal filed* (6th Cir. Oct. 25, 2021).

The Court agrees with defendants that plaintiff has failed to plead sufficient facts to state a claim here. In his complaint, plaintiff has not provided any detail concerning the particular services for which Wells Fargo received the allegedly unreasonable payments of fees; nor has plaintiff stated what a reasonable payment would have been, or identified another company that would have performed the same services for less. The fact that similar plans may have paid lower fees does not create a reasonable or plausible inference that the fees paid by the Plan to Wells Fargo were unreasonable or imprudent, in the absence of facts that the other plans received the same services. This is especially true in this case, as plaintiff has specifically alleged with respect to this claim that Wells Fargo was paid for its services "in various ways, including revenue-sharing and other indirect methods that were not transparent." Thus, the reasonableness of the direct fees paid to Wells Fargo may only be judged in the context of considering the total fees paid, including

fees paid by indirect methods.  Plaintiff has not alleged any such facts comparing the total

fees to the services performed.  Moreover, plaintiff cannot create any inference of

imprudence by a simple comparison to direct fees paid by other plans because the total fees

paid by those other plans may vary depending on their own revenue-sharing and other

indirect fee payments.  Thus, plaintiff's mere allegation that the Plan paid more in direct

fees than other plans does not create any reasonable or plausible inference that the Plan

imprudently paid an unreasonable amount of direct recordkeeping fees to Wells Fargo.  *See*

*Johnson v. PNC Finan. Servs. Group, Inc.*, 2021 WL 3417843, at *4 (W.D. Pa. Aug. 3,

2021) (imprudence could not be inferred from a comparison to direct fees paid by other

plans because the subject plan also paid by indirect means; plaintiff did not state a claim in

the absence of detail concerning the fee structure and the services received for those fees).[6]

The Court therefore grants the motion and dismisses this claim.


### V.    Claim of Breach of Duty of Loyalty

Plaintiff also asserts a claim that defendants breached their duty of loyalty by

allowing the Plan to offer certain higher-cost, low-performing Wells Fargo funds while

also paying fees to Wells Fargo as recordkeeper.  *See* 29 U.S.C. § 1104(a)(1)(A) ("a

---

[6] In addition, plaintiff could not state a plausible claim that defendants were required to have the Plan pay Wells Fargo by a particular method (for instance by paying only direct fees or by paying only particular flat rates per each particular service), as ERISA does not require a particular fee payment structure, and the type of structure used does not in itself create any inference concerning the reasonableness of the fees paid.  *See Divane v. Northwestern Univ.*, 953 F.3d 980, 989-90 (7th Cir. 2020), *vacated on other grounds sub nom. Hughes v. Northwestern Univ.*, 142 S. Ct. 737 (2022).

fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of providing benefits to participants and their beneficiaries").

Defendants seek dismissal of this claim, arguing that plaintiff has not alleged sufficient facts to create a reasonable inference of a breach of the duty of loyalty. Defendants cite caselaw noting that a breach of the duty of loyalty "requires factual allegations that a defendant's actions were for the purpose of providing benefits to himself or someone else," as "having that effect incidentally is not enough." *See Kurtz v. Vail Corp.*, 511 F. Supp. 3d 1185, 1202 (D. Colo. 2021) (citing cases). Defendants also note that courts have held that a breach-of-loyalty claim cannot be based solely on allegations of imprudence, as imprudence alone does not create a reasonable inference that the fiduciary acted for the purpose of benefitting ones other than plan participants and beneficiaries. *See id.* ("a plaintiff must do more than simply recast purported breaches of the duty of prudence as disloyal acts"). Finally, defendants argue that the mere fact of a potential conflict is not enough to show an improper purpose by the fiduciary. *See Brown v. Daikin America, Inc.*, 2021 WL 1758898, at *5 (S.D.N.Y. May 4, 2021) (fact of dual roles was not sufficient to state a claim for breach of the duty of loyalty). Thus, defendants argue that plaintiff has not stated a claim in alleging that defendants acted imprudently with respect to Wells Fargo funds, that Wells Fargo acted in two roles, or that Wells Fargo benefitted from defendants' retention of its funds in the Plan.

As they did with respect to plaintiff's imprudence claims, however, defendants seek to have the Court consider plaintiff's allegations separately, not together as part of a single

claim.   In this case, plaintiff does not solely rely on allegations of a conflict or on allegations of imprudence; rather, plaintiff has alleged facts showing both, and defendants have not cited any authority suggesting that such allegations do not state a claim or create a reasonable inference of an improper purpose by defendants.   Specifically, plaintiff has alleged facts showing that Wells Fargo benefitted by having their own funds in the Plan while it also served as recordkeeper.   Plaintiff has also alleged facts showing that defendants acted imprudently by allowing certain Wells Fargo funds to remain in the Plan because those funds had higher costs and lower performances than alternative funds. Finally, plaintiff has alleged that these facts show that defendants favored the interest of Wells Fargo over the interest of Plan participants.   These factual allegations, taken together and presumed true, do not merely show incidental benefits to Wells Fargo, but also give rise to a reasonable inference that defendants acted with the purpose of benefitting Wells Fargo.   Such allegations distinguish this case from cases cited by defendants in which plaintiffs were found not to have alleged sufficient facts to support this claim.   Accordingly, the Court denies the instant motion as it relates to this claim.

### VI.   Claims of Co-Fiduciary Liability

Plaintiff alleges that each defendant is liable for breaches of duty by co-fiduciaries pursuant to 29 U.S.C. § 1105(a).   That provision makes a fiduciary liable for a breach by another fiduciary in the following circumstances:

> (1)   if he participates in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2)  if, by his failure to comply with section 1104(a)(1) of this title in the administration of his responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3)  if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

*See id.*

Defendants argue that plaintiff's allegations of co-fiduciary liability are not sufficient to state a claim under Section 1105(a) because plaintiff has merely parroted the statute and has not made detailed allegations about how specific defendants participated in, concealed, enabled, or had knowledge of another fiduciary's breach.  Indeed, this Court has previously dismissed co-fiduciary claims where the plaintiff did nothing more than parrot the statute.  *See In re Sprint Corp. ERISA Litigation*, 388 F. Supp. 2d 1207, 1230-31 (D. Kan. 2004) (Lungstrum, J).

Plaintiff notes that elsewhere in the complaint he has alleged that the membership of defendant committee changed over time, and he argues that Section 1105(a) would encompass a scenario in which a new member, who had an ongoing duty to monitor all investments, failed to remedy a breach by a prior member.  Plaintiff has not alleged that basis for co-fiduciary liability, however, or alleged any facts to support such liability.  Moreover, it is not clear whether plaintiff's co-fiduciary claims against the individual defendants are limited to such a scenario.  Thus, the Court dismisses this claim as asserted against the individual defendants.[7]

---

[7] This dismissal is without prejudice to plaintiff's seeking leave to amend this claim at a later date as circumstances warrant.  *See Sprint*, 388 F. Supp. 2d at 1230 n.11.

Plaintiff also notes that he has alleged that the committee was required to include multiple officers of defendant CCBA as members, and that those members' knowledge would be imputed to CCBA. The Court concludes that such additional facts are sufficient to state a co-fiduciary claim against CCBA, as one may reasonably infer from the complaint that CCBA would have had knowledge of any acts by the committee. For the same reason, the Court concludes that this claim may stand as asserted against the Committee.

Alternatively, defendants argue that this claim should be dismissed as asserted against CCBA because that party delegated responsibilities for administering the Plan to the Committee and thus may avail itself of the "safe harbor" provision of 29 U.S.C. § 1105(c). As plaintiff notes in his response, however – and as defendants do not dispute in their reply – co-fiduciary liability under Section 1105(a) is expressly excluded from the safe harbor provided by Section 1105(c). *See id.* [8]

Accordingly, defendants' motion to dismiss the co-fiduciary liability claims is granted with respect to the individual defendants. The motion is also granted to the extent

---

[8] In their reply, defendants argue that this safe-harbor argument applies as well to plaintiff's direct liability claims against CCBA. The Court agrees with plaintiff, however, that defendants made this safe-harbor argument in its initial brief only in seeking dismissal of the co-fiduciary claims, and defendants may not make a new argument against direct liability in their reply brief. Moreover, CCBA's entitlement to a safe-harbor defense depends on the establishment of certain facts, and thus the Court is not persuaded that this affirmative defense may be decided on a motion to dismiss in this case. *Cf. Frost v. ADT, LLC*, 947 F.3d 1261, 1267 (10th Cir. 2020) (it is appropriate to dispose of a claim on a motion to dismiss if "there is no disputed issue of fact raised by an affirmative defense, or the facts are completely disclosed on the face of the pleadings, and realistically nothing further can be developed by pretrial discovery or a trial on the issue raised by the defense") (quoting 5 Wright & Miller, *Federal Practice and Procedure* § 1277).

that the Court has dismissed underlying direct liability claims on which claims of co-fiduciary liability may be based.  The motion is otherwise denied with respect to this claim.

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' motion to dismiss (Doc. # 27) is hereby **granted in part and denied in part**.  The motion is granted with respect to plaintiff's claims related to the Coca-Cola Stock Fund, the claims related to the direct payment of recordkeeping fees, and the claims against the individual defendants for co-fiduciary liability; those claims are hereby dismissed.  The motion is otherwise denied.

IT IS SO ORDERED.

Dated this 30th day of March, 2022, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge