IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| KIMARIO ANDERSON and WILLIAM GRIMMETT, individually and on behalf of the Coca-Cola Bottlers' Association 401(k) Retirement Savings Plan and all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 21-2054-JWL |
| COCA-COLA BOTTLERS' ASSOCATION, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM AND ORDER

This putative class action, brought under the Employee Retirement Income Security Act of 1974 (ERISA), comes before the Court on plaintiffs' motion for final approval of their class action settlement (Doc. # 89) and plaintiffs' motion for attorney fees and other awards (Doc. # 84).   The Court conducted an in-person hearing on the motions on September 15, 2023.   For the reasons set forth in this Memorandum and Order and on the record of the hearing, the Court **grants** the motions to the extent set forth herein. Specifically, the Court approves the settlement; certifies a settlement class; appoints class counsel, class representatives, and a settlement administrator; and authorizes attorney fee awards, awards of costs and expenses, and service awards in particular amounts.   The Court

will also issue a separate order and judgment with additional details, based on a proposed order submitted by plaintiffs.

## I.   <u>Background</u>

Defendant Coca-Cola Bottlers' Association ("CCBA"), an association of independent companies that bottle and distribute Coca-Cola products, offers various employee benefit programs to its members, including a 401(k) retirement plan ("the Plan"). Plaintiffs were employed by a member of CCBA and were participants in the Plan. The Plan was administered on behalf of CCBA by defendant The Coca-Cola Bottlers' Association 401(k) Savings Plan Benefit Committee ("the Committee"), and the individual defendants were members of the Committee at relevant times.

In this action, plaintiffs have asserted claims under Section 404(a) of ERISA, 29 U.S.C. § 1104(a) – on their own behalf, on behalf of the Plan, and on behalf of a putative class of participants and beneficiaries of the Plan since February 1, 2015 – by which they allege breaches of fiduciary duties of prudence and loyalty. On March 30, 2022, the Court dismissed claims relating to one fund offered by the Plan, certain claims relating to recordkeeping fees, and claims against the individual defendants for co-fiduciary liability. *See Anderson v. Coca-Cola Bottlers' Ass'n*, 2022 WL 951218 (D. Kan. Mar. 30, 2022) (Lungstrum, J.).

The parties recently engaged in mediation and reached an agreement to settle the claims in this case, including the class claims. Under that settlement, defendants would pay $3,300,000 into a settlement fund, and the net amount (after deductions for

administrative expenses, attorney fee and expense awards, and service awards) would be distributed to class members *pro rata*, based on their level of investment in the Plan over the class period. Current participants in the Plan would have their accounts credited with their shares, without the need for the submission of claims; and former participants could submit a claim form electing to have their shares rolled into other accounts or plans or to receive payment by check. The agreement provides for a motion by plaintiffs' counsel for an award of attorney fees up to one-third of the gross settlement amount, and for a motion for service awards in maximum amounts of $20,000 for one plaintiff and $10,000 for the other.

By Memorandum and Order of April 28, 2023, and by a separate Order of April 28, 2023, the Court preliminarily approved the class action settlement. *See Anderson v. Coca-Cola Bottlers' Ass'n*, 2023 WL 3159471 (D. Kan. Apr. 28, 2023) (Lungstrum, J.). By those orders, the Court also conditionally certified a settlement class; appointed class counsel, class representatives, and a settlement administrator; authorized notice to the putative class; and set a schedule for further proceedings, including regarding the filing of objections and the final settlement approval hearing. *See id.*

## II.    Certification of a Settlement Class

Plaintiffs seek certification of a non-opt-out settlement class pursuant to Fed. R. Civ. P. 23(b)(1), which allows for a class action if "prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of

conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." *See id.* As this Court has noted, "in light of the derivative nature of ERISA § 502(a)(2) [29 U.S.C. § 1132(a)(2)] claims, breach of fiduciary duty clams brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1)(B) class." *See In re YRC Worldwide, Inc. ERISA Litig.*, 2011 WL 1303367, at *8 (D. Kan. Apr. 6, 2011) (Lungstrum, J.) (quoting *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009)).

The Court conditionally certified a settlement class under this rule, and the Court concludes that final certification under Rule 23(b)(1)(B) is appropriate here. This action involves derivative ERISA claims brought to remedy alleged injuries to the Plan, and therefore individual adjudications would be dispositive of or would substantially impair other members' claims. Moreover, as the Court concluded at the preliminary approval stage, the requirements of Rule 23(a) are also satisfied here: the class, with nearly 40,000 members, is so numerous that joinder of all members is impractible; there are numerous questions of law or fact common to the class; the named plaintiffs' claims are typical of those of the class; and the named plaintiffs, through class counsel, will fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(a). Finally, no putative class member has objected to certification of a settlement class. Accordingly, the Court certifies a non-opt-out settlement class pursuant to Rule 23(b)(1)(B), as defined and for the time period requested by plaintiffs.

4

### III.   <u>Final Approval of the Settlement</u>

Rule 23 requires court approval for the settlement of claims on a class-wide basis. *See* Fed. R. Civ. P. 23(e).  To approve a class action settlement that would bind class members, the Court must find that the settlement is "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2).  In 2018, Rule 23 was amended to add the following factors that a court should consider in making that determination:

> (A)   the class representatives and class counsel have adequately represented the class;
>
> (B)   the proposal was negotiated at arm's length;
>
> (C)   the relief provided for the class is adequate, taking into account:
>
>> (i)   the costs, risks, and delay of trial and appeal;
>>
>> (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv)   any agreement required to be identified under Rule 23(e)(3); and
>
> (D)   the proposal treats class members equitably relative to each other.

*See* Fed. R. Civ. P. 23(e)(2).  The Tenth Circuit has traditionally considered similar factors:

> In deciding whether to approve a class settlement, a district court considers whether (1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) the parties believed the settlement was fair and reasonable.

*See Tennille v. Western Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015) (internal quotation and citation omitted); *see also In re Samsung Top-Load Washing Machine Marketing, Sales Practices and Products Liability Litig.*, 997 F.3d 1077, 1087 (10th Cir. 2021) (listing both sets of factors to be considered by a district court).

The Court finds, based on its consideration of all of these factors, that the proposed settlement is fair, reasonable, and adequate. First, this settlement was reached at mediation after the parties had conducted discovery and vigorously litigated the case, including with respect to a comprehensive motion to dismiss, and there is no basis to suggest collusion or that the settlement was not reached in good faith. Thus, the Court finds that the settlement was fairly and honestly negotiated at arms' length. In the view of the Court, class counsel and class representatives have adequately represented the class in this litigation.[1] The parties believe that this settlement is fair and reasonable, and an independent fiduciary also approved the settlement from defendants' perspective.

The Court also finds that the settlement provides adequate relief to the class, in light of the immediacy of that relief and the costs, delay, and risks of litigating the claims. Recovery for plaintiffs on their claims was by no means assured, as defendants had asserted substantive defenses to liability and damages. Plaintiffs also bore the risk that the Court would deny certification of the class for litigation purposes. Trial and appeals would likely not be completed for years, and the Court agrees with the parties that this immediate

---

[1] The Court reaffirms its prior appointments of the two class representatives, settlement class counsel, and the settlement administrator. In addition, the Court specifically authorizes the settlement administrator's acceptance of a late claim, as requested by counsel at the hearing.

recovery is more valuable than the prospect of a more favorable outcome for the class members.

More specifically, the Court finds that the settlement amount of $3,300,000 – even after reduction to account for an award of attorney fees – provides adequate relief to the class. That amount represents a significant percentage of plaintiffs' estimated maximum damages of $19 million, which amount defendants contested – and it represents a very significant percentage of plaintiffs' maximum damages of $6 million if defendants were to prevail on their claim for an offset of any damages, which defense presented a significant risk for plaintiffs, as acknowledged by both sides' counsel at the settlement approval hearing. Most significantly, only one class member objected to the settlement. That class member stated that he felt that the proposed settlement would be "unfair" to him and "detrimental" to his interests; that his "objections are well-founded and supported by the facts;" and that the proposed settlement "does not accurately reflect the damages" that he has incurred. That member did not support his objection, however, with any facts or further explanation why the proposed settlement would be unfair or inadequate. *Cf.* Fed. R. Civ. P. 23(e)(5)(A) (objection to class settlement must state grounds with specificity). Accordingly, the Court overrules this objection. The lack of any supported substantive objection further confirms the adequacy of the settlement. [2]

---

[2]    In addition, the parties have notified the Court of a fee-sharing agreement involving plaintiffs' counsel, *see* Fed. R. Civ. P. 23(e)(3); and the Court has considered that agreement in finding the relief for class members to be adequate, *see* Fed. R. Civ. P. 23(e)(2)(C)(iv).

The Court also finds that the proposed method of allocation of the settlement amount is fair and reasonable. The parties' agreement calls for the settlement fund to be allocated among class members *pro rata* based on each class member's average account balance in the Fund. That method treats each class member the same, without the need for a complicated and subjective analysis considering the relative strengths and weaknesses of the claims and the degree to which each claim implicates the particular investment options within the Plan. The Court thus finds that the settlement treats the class members equitably relative to each other.

Finally, the Court approves of the proposed method of distributing the settlement fund to class members. Current participants in the Plan will simply receive their distributions in their present Plan accounts, which method removes any need to file a claim and which achieves total participation in the settlement among those class members. Former participants in the Plan were required only to file a simple claim form indicating whether their distribution should be deposited in a different retirement account or they should be sent a check instead.[3] That method is reasonable and adequate.[4] In addition, the

---

[3] The parties recently notified the Court that they had amended their agreement to treat certain class members, whose employer had moved their accounts to a new plan, as current participants of the Plan for purposes of the distribution of the settlement fund. That amendment allows those members to receive their distributions by simple deposits into their present accounts. The Court approves that amendment, which allows for a superior distribution method and total participation for an additional group of class members. The Court previously authorized that supplemental notice be sent to the affected class members; and it hereby approves the content of the parties' proposed notice, and it authorizes the settlement administrator to provide that notice.

[4] 4,200 of the 25,395 former participant class members returned claim forms, which the administrator describes as an expected and reasonable return.

settlement reasonably provides that any unclaimed settlement distributions (for instance, if a settlement check is not cashed) are returned to the Fund to defray administrative expenses associated with the settlement.

### IV.   **Adequacy of Notice**

As the Court noted in the preliminary approval order, it was charged with directing "appropriate" notice "in a reasonable manner" to all class members who would be bound by the proposed settlement. *See Anderson*, 2023 WL 3159471, at *4 (citing Fed. R. Civ. P. 23(c)(2)(A), (e)(1)(B)).   In accordance with the Court's direction in that order, the settlement administrator sent notice by direct mail to all 39,967 class members, and after making multiple attempts when necessary, the administrator failed to reach only 902 class members (2.26 percent of the class).  In addition, the administrator maintained a settlement website (which received nearly 3,000 views) and a telephone information hotline, and a reference to the website was included on current Plan participants' web portals.  The parties also fulfilled their obligation under federal law to provide notice to federal and state Attorneys General (none of whom lodged any objection to the settlement).  The Court finds that reasonable and adequate notice was indeed provided to class members in accordance with the rule and due process.

### V.   **Attorney Fee Award**

The Court has authority to award attorney fees and expenses from the settlement fund in this case.  Rule 23 provides that "[i]n a certified class action, the court may award

reasonable attorney's fees and nontaxable costs that are authorized by law." *See* Fed. R. Civ. P. 23(h).[5]  The agreement here expressly contemplates an award of attorney fees and expenses to counsel who performed work for the benefit of the settlement class members. Fees are also authorized under the common fund doctrine.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[T]his Court has recognized consistently that a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994) (quoting *Boeing*); *see generally* Federal Judicial Center, *Manual for Complex Litigation* §§ 14.21, 20.312 (4th ed. 2004).  The Tenth Circuit has expressed a preference for the percentage-of-the-fund method of awarding attorney fees in common fund cases.  *See Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995) (citing *Gottlieb*, 43 F.3d at 483).

The Tenth Circuit has indicated that a court making a percentage fee award in a common fund case should apply the so-called *Johnson* factors, which are as follows:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee . . .; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

---

[5] The rule further provides that in ruling on a motion for attorney fees, the court "must find the facts and state its legal conclusions under Rule 52(a)."  *See* Fed. R. Civ. P. 23(h)(3).  Accordingly, this section of the order constitutes the Court's findings and conclusions pursuant to Fed. R. Civ. P. 52(a).

*See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-55 (10th Cir. 1988) (citing *Johnson v. Georgia Hwy. Expr., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)); *see also Gottlieb*, 43 F.3d at 483 (court utilizing the percentage-of-the-fund approach must consider the *Johnson* factors).  The Tenth Circuit has recognized, however, that "rarely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation." *See Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993) (quoting *Brown*, 838 F.2d at 456).  Moreover, "[i]n percentage-of-the-fund cases, courts often engage in a 'cross-check' of the fee award against the lodestar figure accounting for counsel's hours and hourly rates." *See In re Urethane Antitrust Ligit.*, 2016 WL 4060156, at *7 (D. Kan. July 29, 2016) (Lungstrum, J.) (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305-06 (3d Cir. 2005)); *see also Manual for Complex Litig.* § 14.121.

In this case, plaintiffs' counsel seek an award of one-third of the settlement amount, or $1,100,000.  They claim that such an award would represent a small multiplier (1.2) using a lodestar cross-check, based on 1,640.1 hours of work, of $887,653.50 using counsel's usual rates (in line with local market rates); or a negative multiplier based on a lodestar of $1,438,795 using national market rates.  They further note that their request represents a reduction from the 40-percent contingency fee to which the named plaintiffs agreed in their contracts with counsel.

The Court finds that one-third of the settlement fund represents a reasonable attorney fee in this case, and it does order such an award.  Experienced counsel were required to perform a great amount of work to achieve this result, including investigation of the claims, drafting of multiple complaints, litigation (mostly successfully) of a

comprehensive motion to dismiss, review of over 2,900 pages of documents from defendants, mediation, seeking settlement approval, and administration of the settlement. Counsel achieved a good result, and no class member has objected to the fee request. Finally, such an award would represent a customary fee in a case like this one, which presented complex issues under ERISA. *See In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1113 (D. Kan. 2018) (Lungstrum, J.) (one-third fee is customary in contingent-fee cases, or is even on the low side, as the figure is often higher in complex cases).

## VI.   Costs and Expenses

Plaintiffs' counsel seek an award of $9,245.80 to reimburse them for actual out-of-pocket costs incurred.  The Court finds that such expenses – the great majority of which related to the successful mediation – were reasonably incurred, and it awards such expenses to counsel from the settlement fund.

The Court further finds that the amount of the expenses incurred by the settlement administrator is reasonable, and it therefore awards such expenses in the amount of $42,764.00.

Finally, the Court awards expenses in the amount $15,000, which the parties reasonably incurred to obtain the review and report by the independent fiduciary, which review was required by applicable regulations.

## VII.  **Service Awards**

The settlement agreement in this case also provided for requests for service awards for Kimario Anderson and William Grimmett, the named plaintiffs, to be paid from the settlement fund.  Plaintiffs seek awards of $20,000 for Mr. Anderson and $10,000 for Mr. Grimmett.  Plaintiffs argue that Mr. Anderson brought the case to the attention of plaintiffs' counsel, and that the case may not have been brought if he had not done so; that he participated throughout the case, spending approximately 75 hours providing and reviewing documents, reviewing allegations made in the complaints, participating in mediation, and giving input regarding the settlement.  Plaintiffs argue that although Mr. Grimmett became involved with the case only after the settlement had been reached, he nonetheless put in approximately 23 hours on the case, which work included providing documents to counsel, reviewing the allegations in a recent amendment to the complaint (the purpose of which was to add him as a plaintiff), conferring with counsel, communicating with other class members, and attending the final settlement hearing.  Plaintiffs further argue that both plaintiffs participated despite concerns that their participation would elicit negative views or treatment from their employer, co-workers, or the public (although counsel conceded at the hearing that no such negative consequences had arisen).  Finally, plaintiffs note that Mr. Anderson bore the risk (however slight) of a an adverse attorney fee award if defendants prevailed in the litigation.

The Court agrees that service awards are appropriate for these reasons.  It finds, however, that a total award of $30,000 would be excessive, based on the amount of participation involved here; and that a $10,000 award to Mr. Grimmett would not be

13

reasonable given his involvement only during the settlement process. Rather, the Court finds that a total service award of $15,000 (which amount would effectively compensate Mssrs. Anderson and Grimmett for their total time at an average rate of approximately $150 per hour) would be reasonable and appropriate here. In allocating that award, the Court notes that Mr. Anderson's conduct necessitated the addition of Mr. Grimmett as a plaintiff after the settlement had been reached, as Mr. Anderson refused for a time to agree to that settlement reached on behalf of the class (based on a mistaken belief that he would receive a much greater share of the settlement than other class members). Accordingly, the Court concludes that it would be inappropriate simply to order a second full service award, to the detriment of the settlement class. Instead, the Court deems it appropriate to divide its intended total award between the two plaintiffs, with $12,000.00 awarded to Mr. Anderson, and $3,000.00 awarded to Mr. Grimmett. The Court finds that such awards are reasonable, and it orders that such awards be made from the settlement fund.[6]

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiffs' motion for final approval of their class action settlement (Doc. # 89) and plaintiffs' motion for attorney fees and other awards (Doc. # 84) are hereby **granted** as more fully set forth herein.

---

[6] The Court grants additional requested relief in the separate order and judgment issued on this date.

IT IS SO ORDERED.

Dated this 18th day of September, 2023, in Kansas City, Kansas.

       /s/  John W. Lungstrum
Hon. John W. Lungstrum
United States District Judge